E-FILED
Friday, 28 October, 2016  09:12:51 AM
Clerk, U.S. District Court, ILCD

IN THE
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

DEBORAH KAY MONTALTA,
     Plaintiff,

v.
                            Case No. 1:15-CV-01392-JEH

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY,
     Defendant.

**Order and Opinion[1]**

The Plaintiff, Deborah Montalta, filed an application for Social Security Disability benefits ("SSD") on April 2, 2013, alleging disability since March 31, 2005. (Tr. 66, 149-1552)[2]. Her application was denied (Tr. 78-81, 94-96) and Montalta requested a hearing by an Administrative Law Judge ("ALJ") on December 12, 2013. (Tr. 100-101). In a letter dated August 25, 2014, Ms. Montalta amended her onset of disability to November 1, 2006. (Tr. 173). A hearing was held before ALJ Karen Sayon on October 6, 2014. (Tr. 32-60). By decision dated December 5, 2014, ALJ Sayon found Ms. Montalta not disabled. (Tr. 15-31). The Plaintiff requested review of the ALJ's decision by the Appeals Council. However, the Appeals Council denied the request for review on March 13, 2015. (Tr. 1-7). This was the final act of the Defendant, Acting Commissioner of Social Security ("Commissioner"). The Plaintiff argues in this Court that the ALJ erred when

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (D. 8, 11).
[2] Citations to the Social Security Transcript are cited as "Tr. __," and citations to the Docket in this case are cited as "D. __."

finding that her alleged cervical spine impairment was non-severe at step two of the sequential process, described below. The Court disagrees and, accordingly, as set forth, *infra*, the Plaintiff's Motion for Summary Judgment (D. 9) is DENIED and the Defendant's Motion for Summary Affirmance (D. 14) is GRANTED.

## I
## A

The Court's function on review of a denial of social security benefits is not to try the case *de novo* or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that her inability to work is medical in nature and that she is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. §§ 404.1566, 416.966 (1986). The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five- step test. *See* 20 C.F.R. §§ 404.1520, 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;
2) suffers from an impairment that is severe or whether a combination of her impairments is severe;
3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;
4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and
5) is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer at any step leads either to the next step of the test, or at steps three and five, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step three, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps one through four. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Tom v. Heckler*, 779 F.2d 1250 (7th Cir. 1985); *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).

**B**

In the instant case, the Plaintiff alleges error at step two, when the ALJ found that she had no severe impairments prior to her date of last insured, *i.e.* December 31, 2010.  Specifically, she argues that her cervical spine impairment was in fact severe and met the durational requirements set forth in the regulations. The ALJ made this erroneous conclusion, in her opinion, because she failed to give Montalta's treating surgeon's opinion sufficient weight and improperly judged her credibility.

Step two is "merely a threshold requirement." *Curvin v. Colvin*, 778 F.3d 645, 648 (7th Cir. 2015), *quoting Castile v. Astrue*, 617 F.3d 923, 926-27 (7th Cir. 2010) (citation omitted; *quoting Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999). Indeed, it is a "*de minimis* screening for groundless claims." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016), *citing Newell v. Comm'r of Soc. Sec.,* 347 F.3d 541, 546 (3d. Cir. 2003); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *McDonald v. Sec. of Health and Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). SSR 96-3p provides that if an individual's impairment does not appear from the objective medical evidence to be severe, then the ALJ must consider the limitations and restrictions caused by the individual's symptoms. *Id.* at 649. Critically, "[i]f these additional considerations cause 'more than minimal effect on an individual's ability to do basic work activities', the ALJ must find that the impairment(s) is severe *and proceed to the next step in the process* even if the objective medical evidence would not in itself establish that the impairment(s) is severe." *Curvin*, 778 F.3d at 649, quoting SSR 96-3p (emphasis in original).

Even if an impairment is found to be "severe" at step two, the impairment must also meet the duration requirement set forth at 20 C.F.R. § 404.1509 before proceeding to subsequent steps. Specifically, 20 C.F.R. § 404.1520(a)(4)(ii) states that "[a]t the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the

4

duration requirement, we will find that you are not disabled." The determination as to whether an impairment is severe is a separate determination from whether the impairment meets the duration requirement. *See Brown v. Astrue,* 2012 WL 2376069, at *4 (S.D. Ind., June 22, 2012). In other words, "[a]n impairment could conceivably be considered severe but not meet the duration requirement, in which case the analysis would not proceed to step three." *Id.* Therefore, the failure of an impairment to meet the duration requirement does not inform the ALJ regarding the *severity* of the impairment; that question is independent of the duration requirement. *See McKinley v. Colvin*, 2015 WL 404565, *6 (N.D. Ind., Jan. 28, 2015).

Regarding the duration requirement set forth at 20 C.F.R. § 404.1509, that provision states, "Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement." An impairment meets the duration requirement if it is expected to *last* for a period of twelve months; there is no requirement that the impairment have already lasted for twelve months at the time of the decision. *See* 20 C.F.R. § 404.1509; SSR 82–52.  Social Security Ruling 82–52 provides that in cases denied on the basis of insufficient duration, the ALJ "must state clearly in the denial rationale that" within twelve months of onset, there was or is expected to be sufficient restoration of function so that either "there is or will be no significant limitation of the ability to perform basic work-related function" or "that in spite of significant remaining limitations the individual should be able to do past relevant work or otherwise engage in [significant gainful activity], considering pertinent vocational factors." SSR 82–52; *see also Schiavone v. Astrue,* No. 3:10–CV–149, 2011 WL 4602151, at *12 (N.D. Ind. Sept. 29, 2011) ("If the ALJ denies a claim because of insufficient duration, the ALJ must state clearly that there is expected to be sufficient restoration of function within 12 months of onset.").

Finally, an error at step two can nevertheless be harmless, provided the ALJ considers all of a claimant's severe and non-severe impairments when determining

the RFC immediately after step three. *Curvin*, 778 F.3d at 649. However, if an ALJ fails to factor those severe and non-severe mental limitations into the RFC, then the error cannot be harmless. *Ramos*, 674 F. Supp. 2d at 1091.

## II

Montalta alleged onset of disability on November 1, 2006, though her date last insured was December 31, 2010. (Tr. 20). The ALJ found that Montalta had the following "medically determinable impairments: status post right calcaneus, navicular, and talus fractures; migraines; left shoulder rotator cuff tendinitis; status post 11/06 cervical fusion; mild carpal tunnel syndrome; and hypothyroidism." *Id.* Nevertheless, the ALJ decided that none of these impairments was severe at step two, she concluding that Montalta did not have an impairment or combination of impairments that significantly limited her ability to perform basic work related activities for 12 consecutive months. *Id.* Because of this conclusion, the ALJ found that Montalta is not disabled and did not proceed to the other steps in the sequential process. Montalta argues that the ALJ should have found that her cervical spine impairment was "severe" for purposes of step two and proceeded through the other steps.

The ALJ initially concluded that the objective medical evidence did not establish that Montalta's cervical spine impairment did not significantly limit her ability to perform basic work-related activities for 12 consecutive months. She was correct in doing so.

Specifically, on November 17, 2006, Montalta underwent an anterior cervical discectomy, arthrodesis, and cervical instrumentation and placement of structural allograft at C6-C7 performed by neurosurgeon Juan Jimenez, M.D. (Tr. 291-293). Dr. Jimenez, in December of 2011, noted in a treatment note that Montalta did "fantastic" following her surgery. (Tr. 387). Following surgery, Montalta underwent a period of physical therapy, beginning in January of 2007 through

April of 2007, during which time she reported pain at various sessions ranging from none to a 3 out of 10. (Tr. 463-471, 701-725, 835-864). A subsequent MRI conducted almost a year and a half later, on August 30, 2008, revealed postoperative changes at C6-C7 and mild degenerative disc disease from C3-C6. (Tr. 300-301).

After her discharge from physical therapy and MRI, the medical records are silent regarding Montalta's cervical spine issue until August 8, 2011 when she had another MRI done, although the records reveal numerous other treatments for other issues during this period.[3]

Dr. Douglas Morr, Montalta's treating physician at the time, ordered the MRI due to neck and bilateral shoulder pain. (Tr. 596). In his treatment note dated August 18, 2011, he stated that Montalta began to experience these symptoms in June of 2011. He also noted that she reported symptoms similar to those she experienced prior to her 2006 surgery, although that surgery completely relieved her symptoms at that time. (Tr. 409). He noted that the MRI showed stable postoperative changes at C6-C7, along with degenerative disc disease at C4-C5. *Id.* He treated her with an epidural injection and scheduled a follow-up visit.  At that follow-up visit on September 12, 2011, Dr. Morr noted that the epidural provided no significant relief, with Montalta's pain now rating a 6 out of 10.

Then, on September 26, 2011, Montalta presented to Dr. Jimenez, the neurosurgeon who performed her 2006 surgery. Dr. Jimenez reviewed the 2011 MRI and noted "expected postoperative changes at the C6-C7 level" and "progressive degeneration noted at the C4-C5 level." (Tr. 377). Montalta reported to him that in March 2011, she developed "right neck pain radiating into the right

---

[3] Montalta's other alleged impairments were also found to be non-severe by the ALJ, but, as the Commissioner notes, Montalta does not challenge the ALJ's determination as to these other impairments and has accordingly waived any such challenge. This Court will therefore not discuss them. *See* D. 15 at p. 5),

shoulder and upper arm," "numbness in the fourth and fifth digits," "weakness in her right hand," "unsure footing", and physical therapy and home exercises which worsened her symptoms. *Id.* This visit led to more tests and doctor visits, eventually culminating in another back surgery in January of 2013.

As the ALJ found, there are simply no medical records to support a finding that the cervical spine impairment was severe up through the date of last insured. The records indicate Montalta reported that the 2006 surgery completely relieved her symptoms (Tr. 409) and she received no further treatment for her cervical spine impairment between her discharge from physical therapy in April of 2007 and her date of last insured on December 31, 2010. Even when she first sought treatment in August of 2011—after the date of last insured—she was on no pain medication. Although she undoubtedly began to eventually experience renewed symptoms related to her back issues, eventually resulting in a second surgery, the medical records clearly indicate that those renewed symptoms first appeared at earliest in March of 2011—well after the date of last insured.

Looking next to the opinion evidence in the record, the ALJ assigned great weight to the opinions of the state agency medical consultants, C. A. Gotway, M.D and Vidya Madala, M.D., both of whom concluded that there was insufficient evidence to establish the severity of Montalta's impairments during the relevant time period. (Tr. 61-65, 67-72). Given the lack of symptoms, treatment, or records related to any cervical spine impairment from April 2007 through the date of last insured, the ALJ's crediting these opinions was supported by substantial evidence.

Likewise, the ALJ's decision to give no weight to Dr. Jimenez's opinion was supported by substantial evidence. At Montalta's hearing before the ALJ, she submitted an undated form that Dr. Jimenez completed for her disability claim. (Tr. 1396-1403). He noted a number of limitations caused by Montalta's cervical

spine impairment which would definitely meet the threshold requirements at step two, but, as the ALJ noted, there were a number of problems with his opinion.

First, it was undated, making it impossible for the ALJ or this Court to know when exactly the form was completed. Second, he indicates the symptoms and limitations dated back to January 1, 2005, but this notation does not account for Montalta's successful surgery in 2006 which he characterized as "fantastic" and is difficult to square with Montalta's lack of treatment or symptoms from April 2007 through at least March of 2011. Rather, it is clear that his opinion regarding Montalta's symptoms and limitations relate to her cervical spine issues which began in March of 2011—at earliest—and which resulted in the subsequent second surgery, all of which dates were after the date of last insured. Accordingly, in light of the objective medical evidence and the other opinion evidence in the record, the ALJ correctly assigned no weight to this opinion.

Finally, as the ALJ was required to do, in the absence of objective medical evidence alone establishing a severe impairment, she evaluated Montalta's claims regarding the intensity, persistence, and limiting effects of her alleged symptoms. She found her claims in this regard "not entirely credible." (Tr. 23). This determination was not patently erroneous.

For example, Montalta testified at the hearing that her 2006 surgery had "not really" helped at all and that "she couldn't do much." (Tr. 41-42). However, her statements to treatment providers in the medical record flatly contradict this testimony. Again, she stated to them that her surgery completely resolved her symptoms. After successfully completing physical therapy in April of 2007, she never sought treatment of any kind for issues related to her cervical spine until after the date of last insured. She took no pain medication during this time period for symptoms related to her cervical spine. It simply strains credulity to claim impairment to the degree testified to by Montalta when the medical record is

9

completely silent on the issue after April of 2007 through December 31, 2010. The ALJ very carefully evaluated Montalta's subjective claims against her statements to treatment providers, her medical records, and the opinion evidence in the record. The disconnect between her testimony and these other sources of evidence was simply too great to credit her testimony.

It is tempting to assume that Montalta had cervical spine symptoms prior to the date of last insured given her need for a second surgery *after* the date of last insured. And, in some cases, there would undoubtedly be some evidence before the date of last insured to support a finding that the symptoms and impairments arose during the relevant time period and only culminated after the date of last insured. If that were the case here, then Montalta's need for the second surgery would be quite relevant to a finding at step two. But that is not the case here. After April of 2007, there is not a single of medical evidence showing any cervical spine symptoms or impairments other than Montalta's own testimony—this in spite of the fact that she saw numerous treatment providers for numerous other issues throughout the period. By her own statements to her treating physicians at the time in August and September of 2011, she stated that her renewed symptoms started in either March or June of 2011—both dates after the date of last insured. Symptoms which first appear after the date of last insured are not relevant to a determination of the severity of an impairment before that date.

It is the rare case which fails at step two, given its threshold nature and the fact that step two is a "*de minimis* screening for groundless claims." *Thomas v. Colvin*, 826 F.3d 961 (7th Cir. 2016). However, if the step is to have any purpose at all, then some cases will fail to cross the threshold. This is one of those cases for the reasons stated, *supra*.

**III**

In light of the foregoing, the Plaintiff's Motion for Summary Judgment (D. 9) is DENIED and the Defendant's Motion for Summary Affirmance (D. 14) is GRANTED. The Court AFFIRMS the ALJ's Decision. This matter is now terminated.

*It is so ordered.*

Entered on October 28, 2016

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE

11